UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD O'NEAL, an individual,

   Plaintiff,

  v.

CITY OF PACIFIC, a municipal corporation, et al.,

   Defendants.

CASE NO. C11-0231RSM

ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Richard O'Neal, appearing through counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming two individual police officers, Joshua Hong and Jason Nixon and their marital communities, and the City of Pacific. The complaint also asserts state law claims of negligence and malicious prosecution. The matter is before the Court for consideration of defendants' motion for summary judgment. Dkt. # 16. Plaintiff has opposed the motion. For the reasons set forth below, the Court shall grant in part, deny in part, and defer in part the motion.

FACTUAL BACKGROUND

This action arises from an investigatory stop and subsequent arrest. The facts are for the most part not in dispute; it is the legal consequences of those facts which form the basis for defendants'

ORDER - 1

motion. Both sides have submitted a copy of the audio-video recording that was made by a camera situated inside the police car. This has been very helpful to the Court.

On the evening of January 27, 2008, the City of Pacific Police Department received a report from a citizen of a gray 1990's Chevrolet Astro van which was speeding and swerving as if the driver were intoxicated. The location was given as Ellingson Avenue just off Highway 167. Officer Nixon spotted a van matching the description parked at Giu's Market and contacted Officer Hong. Officer Hong arrived, pulled up behind the van, and activated the video camera. Mr. O'Neal exited the van, talking on his cell phone. The officers asked him to terminate the call, which he did. The officers then explained that they were investigating a report of a gray van matching plaintiff's, which was seen speeding and swerving as if the driver were intoxicated. They asked if plaintiff had been drinking and he responded that he had not. Officer Hong then asked plaintiff for identification. After patting his front pockets, plaintiff responded that he did not have it with him. Officer Hong then asked for plaintiff's name and date of birth. Plaintiff stated his name was "Rick O'Neal" but did not spell it. Officer Hong asked if it were spelled "O'N E I L" and plaintiff answered affirmatively. He said his name was actually "Richard O'Neil" and his middle name was Alonzo. He gave his correct date of birth, but Officer Hong apparently heard it incorrectly. Plaintiff was allowed to leave the scene to go into the market.

While plaintiff was in the market, Officer Hong called dispatch to check on warrants or a criminal record for Richard A. O'Neil. The report came back with no record, but a "close hit" for a Kitsap County felony warrant for attempting to elude police, effective December 26, 2007. The name on the warrant was Richard Alonzo O'Neal. When plaintiff returned to the van, he was advised by the officers that he was not free to leave. He was asked to spell his name, and he answered "O'Neil." He was then asked for his social security number. The number he provided was one digit off from the social security number on the Richard O'Neal warrant. The physical description of the person named in the warrant closely matched plaintiff.

Plaintiff stated several times that he was going to leave and walk home, and that he had not broken any law. The officers told him to stand by the rear of the van and stay there. Plaintiff started to

ORDER - 2

leave that position and Officer Hong ordered him to place his hands behind his back for handcuffing. Officer Hong then grabbed plaintiff's left arm and pushed his head down onto the hood of the patrol vehicle. At this time Officer Hong had plaintiff's left arm in an arm lock, but plaintiff's right arm was free and could not be cuffed by Officer Nixon. In the ensuing struggle to apply the handcuffs, plaintiff's left arm was broken. These events, including the moment when the left arm was broken, can all be seen on the video.

According to the police report of Officer Nixon, he then called for an aid vehicle to evaluate plaintiff's injuries. After the firefighters determined that plaintiff's arm was broken, the officers released plaintiff to the emergency medical crew for transport to Auburn General Hospital. Declaration of Jason Nixon, Dkt. # 19, Exhibit 1. Officer Nixon then contacted the Command Duty Officer, Lieutenant Massey, who advised him to go to the hospital and take Mr. O'Neal into custody once he was released. *Id*. At the hospital, however, the treating physician advised Officer Nixon that King County Jail would not accept plaintiff due to the extent of his injury, which required careful monitoring to avert nerve damage. *Id*. When Lt. Massey was informed of this, he came to the hospital to talk with plaintiff. He gave him his business card, informed him of the outstanding Kitsap County warrant, and advised him that he would later receive citations from the City of Pacific Municipal Court. *Id*. Plaintiff subsequently received criminal citations for obstructing a law enforcement officer and resisting arrest, and driving with a suspended license. *Id*., Exhibits 2(a) and (b). After a *pro tem* judge of the Pacific Municipal Court granted plaintiff's motion to suppress evidence, the charges were dismissed.

Plaintiff filed this complaint in King County Superior Court, asserting three causes of actions: Count One for negligence, against the individual defendants and the City of Pacific; Count Two, the §1983 civil rights claim against all defendants for violation of plaintiff's Fourth, Fifth, and Fourteenth Amendment rights; and Count Three, against the City of Pacific for malicious prosecution. The complaint was removed to this Court on the basis of the §1983 federal claim. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

Following removal, defendants moved for a stay of discovery, pending a determination by the Court on the individual defendants' affirmative defense of qualified immunity. Dkt. # 8. The motion

ORDER - 3

was granted, and discovery has been stayed pending a ruling on defendants' motion for summary judgment.[1]

Defendants' reply on their motion contains a motion to strike, as hearsay, various statements made by plaintiff in opposition to the motion for summary judgment. Dkt. # 27. Plaintiff has not opposed the motion to strike and it is accordingly GRANTED.

## DISCUSSION

### I. Legal Standard

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id.* However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### II. Qualified Immunity Analysis

Qualified immunity shields public officials from civil damages for the performance of their discretionary functions. The defense of qualified immunity is more than a "mere defense to liability," but is actually a complete immunity from suit, and from all the risks, distractions and "inhibitions of discretionary action, and deterrence of able people from public service," that go along with being a

---

[1]The Court notes that defendants' motion extends well beyond the issue of qualified immunity, as the motion asks for dismissal on the merits of all claims against all defendants. Because plaintiff has not been allowed discovery, the Court's ruling will address only the §1983 claims as to which defendants have asserted qualified immunity. Defendants' motion for summary judgment on the state law claims and the City of Pacific's liability under § 1983 shall be denied, without prejudice to renewal after a period of discovery.

ORDER - 4

defendant in a civil lawsuit. *Mitchell v. Forsyth*, 472 U.S. 511, 525-30 (1985). The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties. *Mueller v. Auker*, 576 F. 3d 979, 993 (9th Cir. 2009).

Both individual officers here have asserted the defense of qualified immunity from plaintiff's §1983 claims. In determining whether qualified immunity applies, the Court engages in a two-step process. First, the Court should consider whether, taking the facts in the light most favorable to plaintiff, they show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is no, then the inquiry ends there. However, if a violation could be demonstrated from a view of the evidence favorable to plaintiff's position, then the question for the Court is whether the right that was violated was so clearly established that a reasonable officer would understand that his conduct violated that right. *Id*. The Court has discretion to consider these two factors in reverse order, as appropriate. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

    A. <u>Unlawful Arrest</u>

Plaintiff contends that he was unlawfully seized within the meaning of the Fourth Amendment from the time the officers pulled up behind his parked van to block his escape, shined lights on him while questioning him about his driving, and indicated by words or behavior that he was not free to leave. Plaintiff's claim is based in part upon a ruling by the City of Renton Municipal Court on his motion to suppress evidence in the criminal case that resulted from the events at issue here. In a one-paragraph ruling with no case citations or legal analysis at all, the judge concluded that plaintiff was arrested without probable cause. Declaration of Jason Rosen, Dkt. #17, Exhibit D. In determining whether plaintiff's constitutional rights were violated, this Court is not bound by this conclusory finding regarding probable cause. In deeming the officer's actions as an arrest without probable cause, the Pacific Municipal Court judge disregarded well-settled law regarding investigatory stops.

An investigatory stop or encounter does not violate the Fourth Amendment if the officers have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States*

ORDER - 5

*v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968). An investigatory stop under *Terry* only requires reasonable suspicion, not probable cause. *See Washington v. Lambert*, 98 F. 3d 1181, 1185-86 (9th Cir. 1996).

To determine whether a seizure was a *Terry* stop or an arrest, courts apply the "general consideration" that a *Terry* stop is brief and of a minimally intrusive nature. *United States v. Guzman-Padilla*, 573 F. 3d 865, 884 (9th Cir. 2009). Beyond this general consideration, the courts usually use two inquiries to determine whether a seizure was a *Terry* stop or an arrest. "First, it is well-established that intrusive measures may convert a stop into an arrest if the measures would cause a reasonable person to feel that he or she will not be free to leave after brief questioning—i.e., that indefinite custodial detention is inevitable." *Id.* However, because the purpose of a Terry stop is to allow the officer to pursue his investigation without fear of violence, "we allow intrusive and aggressive police conduct without deeming it an arrest . . . when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *Id.* (*quoting United States v. Taylor*, 716 F. 2d 701, 708 (9th Cir. 1983); *United States v. Miles*, 247 F. 3d 1009, 1012-13 (9th Cir. 2001).

Determining a suspect's identity is an important aspect of police authority under *Terry*. *United States v. Christian*, 356 F. 3d 1103, 1106 (9th Cir. 2004) (citing *Michigan v. Summers*, 452 U.S. 692, 700 n. 12 (1981). Where the person is unable to produce identification, it is not unreasonable to prolong the detention by asking a series of biographical questions such as date of birth and correct spelling of the person's name to further establish his identity. *See United States v. Turvin*, 517 F. 3d 1097, 1101-02 (9th Cir. 2008) (holding that a "brief pause" to ask questions is reasonable).

Here, the officers had a reasonable suspicion that plaintiff may have been the intoxicated driver reported by the citizen, as his van closely matched the description, and was found in the vicinity within a short time of the citizen's call. The officers were entitled to detain him briefly to investigate whether he might be intoxicated by talking to him and observing his behavior. This was a reasonable response to legitimate safety concerns regarding danger to other drivers from having an intoxicated driver on the road. The officers were also entitled to request that he show identification. When plaintiff stated that he

ORDER - 6

was not carrying his driver's license after stating where he had been driving, he admitted to a violation of Washington law. Nevertheless, the officers allowed him to depart the scene and go into the store.

By the time plaintiff exited the store, the officers had information from dispatch that there was an outstanding warrant for a person of the same name, including the middle name of Alonzo, but differing in spelling of the last name by one letter. When Officer Hong attempted to clarify plaintiff's identity by asking him to spell his name and give his social security number, plaintiff again violated the law by spelling his name incorrectly and giving an incorrect social security number.

The officers' conduct in telling plaintiff that he was not free to leave at that point was reasonable, in light of the very close match between plaintiff's name and the name on the outstanding warrant. They had probable cause to arrest him, because "under the totality of the circumstances known to the arresting officers . . . , a prudent person would believe the suspect had committed a crime." *Dubner v. City and County of San Francisco*, 266 F. 3d 959, 966 (9th Cir. 2001).

Reasonable suspicion may ripen into probable cause based on events that occur after the initial investigative stop. *United States v. Greene*, 783 F. 2d 1364, 1368 (9th Cir. 1986). Although the encounter began as a legitimate *Terry* encounter, it ripened into an arrest supported by probable cause when plaintiff failed to produce his driver's license and gave false information regarding his name, and when the officers learned of the outstanding warrant for attempting to elude police on an earlier occasion. Neither Officer Hong nor Officer Nixon violated plaintiff's constitutional rights with respect to the *Terry* stop and subsequent arrest.

Having determined that no constitutional right was violated, the Court need not proceed to the second prong of the qualified immunity analysis. Defendants are entitled to summary judgment on plaintiff's claim of unlawful arrest.

B. Excessive Force

With respect to plaintiff's claim of excessive force during the arrest, the Court turns first to the question of whether an arrestee's right to be free of excessive force was clearly established in January

ORDER - 7

2008. That is, did the officers at that time have "fair warning" that the level of force they used in arresting plaintiff was excessive. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). If the law did not provide such fair warning, the officers are entitled to qualified immunity regardless of whether a constitutional violation occurred. If it did, the Court must then consider whether plaintiff's clearly established right was violated by the officers' conduct.

It was clearly established before January 2008 that "force is only justified when there is a need for force." *Blankenhorn v. City of Orange*, 485 F. 3d 463, 481 (9th Cir. 2007) (*citing Graham v. Connor*, 490 U.S. 396 (1989). Indeed, the use of excessive force in effecting an arrest "was clearly proscribed by the Fourth Amendment at least as early as 1985." *Palmer v. Sanderson*, 9 F. 3d 1433, 1436 (9th Cir. 1993); *citing Tennessee v. Garner*, 471 U.S. 1 (1985). Specifically, the application of handcuffs in an abusive manner, so as to cause injury to the arrestee, was held to be excessive force in 1989. *Hansen v. Black*, 885 F. 2d 642, 645 (9th Cir. 1989). Application of handcuffs in such a way as to cause pain and bruising has also been found an unreasonable use of force. *Palmer v. Sanderson*, 9 F. 3d at 1436. The roughness used here in handcuffing plaintiff, which resulted in a badly broken arm, was more egregious than the force found unreasonable in these cases. The officers thus had fair notice that their conduct violated clearly established law, if the force used was excessive under the circumstances.

Turning to the first prong of the *Saucier* inquiry, the Court must consider whether the officers' use of force during the arrest actually violated plaintiff's constitutional rights. In determining whether the force used to effect a particular seizure was excessive, the Court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Reasonableness must also "be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.*

ORDER - 8

Additionally, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments---in circumstances that are tense, uncertain, and rapidly evolving---about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Evaluation of these *Graham* factors in this case requires factual determinations which must be left to the jury. A reasonable juror could find, under the circumstances presented here, that Officer Hong acted unreasonably in breaking plaintiff's arm, and that such action constituted an unnecessary application of force. On the other hand, if the juror determined that plaintiff was actively resisting arrest or attempting to flee, or posed a threat to the officers or others, he or she could find that the officer's actions were reasonable. Summary judgment must accordingly be denied on plaintiff's claim of excessive force.

    C. Fifth Amendment Due Process Claim

In his §1983 claim (Count II of the complaint), plaintiff asserts that defendants' conduct violated his Fourth, Fifth, and Fourteenth Amendment rights. Complaint, Dkt. # 1, ¶ 36. Defendants moved to dismiss the Fifth Amendment claim on the basis that there was no attempt to coerce a confession from plaintiff. In response to this line of argument, plaintiff clarified that his claim under the Fifth Amendment is that defendants "clearly violated [his] Fifth Amendment right not to be deprived of his liberty." Plaintiff's opposition, Dkt. # 23, p. 15. Plaintiff thus invokes the due process clause of the Fifth Amendment, which states that no person shall be deprived of life, liberty, or property, without due process of law.

Plaintiff's Fifth Amendment claim fails as a matter of law, because the Fifth Amendment due process clause does not apply to actions by local police officers or municipalities. "[T]he Fifth Amendment's due process clause only applies to the federal government," not state or local law enforcement officials. *Bingue v. Prunchak*, 512 F. 3d 1169, 1174 (9th Cir. 2008); *see also Castillo v. McFaddan*, 399 F. 3d 993, 1002 n. 5 (9th Cir. 2005) ("[Plaintiff's] citation of the Fifth Amendment was, of course, incorrect. The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by

ORDER - 9

the several States.").

Defendants' motion for summary judgment on plaintiff's Fifth Amendment claim shall accordingly be GRANTED.

## CONCLUSION

Defendants' motion for summary judgment on the basis of qualified immunity is GRANTED as to plaintiff's claim of unlawful arrest, and DENIED as to plaintiff's claim of excessive force in effecting the arrest. The unlawful arrest claim is DISMISSED as to all defendants, including the City of Pacific, as the Court has determined that there was reasonable suspicion to support the *Terry* stop and probable cause to support the subsequent arrest. Plaintiff's Fifth Amendment due process claim is also DISMISSED, as such claim can only be asserted against the federal government.

The Court declines to rule on the merits of defendants' motion with respect to plaintiff's state law claims of negligence and malicious prosecution, because discovery has not begun and plaintiff has had no opportunity to present facts in opposition to the motion. Fed.R.Civ.P. 56(d). Defendants' motion for summary judgment on these claims (designated as Counts I and II in the complaint) shall be DENIED, without prejudice to renewal at the appropriate time.

The stay of discovery imposed previously (Dkt. # 12) is hereby LIFTED. The Clerk shall now set a trial date and issue a Scheduling Order, guided by the parties' Joint Status Report filed at Dkt. # 7.

DATED this 17th day of February 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 10